Filed 3/17/15  In re J.P. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re J.P., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B256967 (Super. Ct. No. J-1300405) (Santa Barbara County) |
| THE PEOPLE,  Plaintiff and Respondent,  v.  J.P.,  Defendant and Appellant. | |

J.P., a person coming under the juvenile court law, appeals a judgment of the juvenile court sustaining a juvenile wardship petition  (Welf. & Inst. Code, § 602, subd. (a)), with the finding that he attempted to deter police officers from performing their duties by making a threat (Pen. Code, § 69).[1]  Substantial evidence supports the finding.  We affirm.

### FACTS

On March 6, 2014, Police Officer Charles Venable responded to a dispatch call to go to a residence because of  "a disturbance involving a juvenile."  J.P.'s mother had called police.  She told Venable that J.P. "was inside fighting with her husband."

---

[1] All further statutory references are to the Penal Code.

Venable entered the home and handcuffed J.P. He called for an ambulance because he "didn't feel like [J.P.] would transport well in a police car in his condition."

While handcuffed J.P. made threats. Venable testified J.P. told the police officers that his brother, a member of the Eastside gang, "would hunt [them] down and kill [them]." Venable said that "the Eastside is one of the two major criminal gangs in the city." He knew who J.P.'s brother was and testified that "[J.P.'s brother is] definitely associated with the Eastside." The prosecutor asked, "[W]as there anything said about his cousins coming to get you as well, being from the Eastside?" Venable: "Yes." Venable was familiar with the people J.P. mentioned in the threats. He said, "I know there are numerous [P.] family members in the city."

J.P. was taken to a hospital. His medical "lab work" showed he tested "positive for alcohol and marijuana." J.P.'s parents told police they believed he "was really intoxicated and/or on drugs and hallucinating."

The prosecutor asked Venable, "[W]hen the alleged threats were being made towards you and the other officers outside the home . . . , was that said clearly or was that mumbled . . . ." Venable: "It was very clear as he was seated on the curb waiting for the ambulance."

The trial court sustained a juvenile wardship petition and found J.P. made threats in violation of section 69. It said J.P. "used threats" to "deter Officer Venable from performing the duty of taking [J.P.] into custody to get him under control and that there was a threat of future violence against [Venable] in the performance of future duty."

DISCUSSION

*Section 69*

J.P. contends the trial court erred by sustaining the petition because the evidence is insufficient to support the finding that he violated section 69. We disagree.

In deciding the sufficiency of the evidence, we draw all reasonable inferences in support of the judgment. (*People v. Villalobos* (2006) 145 Cal.App.4th 310, 321-322.) We do not weigh the evidence or decide the credibility of the witnesses.

2

A defendant violates section 69 where he or she "attempts by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law . . . ." (§ 69.)

"[T]he statutory language does not require that the officer be engaged in the performance of his or her duties at the time the threat is made." (*In re Manuel G.* (1997) 16 Cal.4th 805, 817.) "Instead, the plain language of the statute encompasses attempts to deter *either* an officer's *immediate* performance of a duty imposed by law *or* the officer's performance of such a duty at some time *in the future*." (*Ibid.*)

"The phrase 'any duty imposed upon such officer by law' reasonably cannot be limited solely to execution of process and similar duties, because the law requires and authorizes officers to perform numerous other duties." (*In re Manuel G.*, *supra*, 16 Cal.4th at p. 818.) "[W]e discern no legislative intent to distinguish among different types of duties . . . ." (*Id.* at p. 819.) "[S]ection 69 does not require a showing that [the officers] took the threats seriously or felt threatened . . . or that defendant had the present ability to carry out the threats." (*People v. Hamilton* (2009) 45 Cal.4th 863, 936.)

Here Venable testified J.P. made threats to the officers that J.P.'s brother, a member of a criminal street gang, "would hunt [them] down and kill [them]," and J.P.'s cousins were "coming to get [him]." J.P. made these threats after he was handcuffed and while he was being detained by police.

J.P. contends he "does not fall within the reach of section 69 because [the threat] was made in retaliation after the police completed their duties." He argues the threat occurred "after he was arrested by officer Venable."

But a police officer's duties are not limited to the act of making the arrest. (*In re Manuel G.*, *supra*, 16 Cal.4th at pp. 818-819.) The trial court could reasonably find the activity of detaining J.P. pending the arrival of the ambulance involved official duties of police officers within the meaning of section 69. (*Ibid.*)

J.P. contends his remarks were not threats within the meaning of section 69 because he did not specify what action he wanted stopped. But the trial court could

3

reasonably infer he made the threat to compel police to free him from custody and remove the handcuffs.

J.P. claims he did not make threats because his remarks were only an "impulsive outburst." He cites evidence that he was "drunk and/or hallucinating" and claims his outburst was not intended as a threat. But the issue is not whether some evidence supports his position, it is only whether substantial evidence supports the judgment. We do not weigh the evidence as that is a matter for the juvenile court. The trial court could reasonably find this was not an isolated emotional outburst. Venable said J.P. made "all kinds of statements to the officers that were there." The court could find he was not hallucinating when he made the threat. Venable said the threat was not "mumbled" and J.P.'s statements were "very clear." J.P. described the nature of the threat and specifically identified the individuals who would carry it out. The court could infer the content of the threats showed an intent to achieve a specific result. His message was unambiguous--there would be gang retaliation for the officers' act of detaining him. Venable knew the gang affiliation of the people J.P. mentioned. The goal of section 69 is to allow police officers to "feel free to pursue their lawful duties without fear of violent retaliation." (*In re Manuel G.*, *supra*, 16 Cal.4th at p. 819.) J.P.'s conduct falls within the scope of the statute. The evidence is sufficient.

The judgment is affirmed.

NOT TO BE PUBLISHED.



GILBERT, P. J.

We concur:



YEGAN, J.



PERREN, J.

4

Denise de Bellefeuille, Judge

Superior Court County of Santa Barbara

_____


Law Office of Eric Cioffi, Eric Cioffe for Defendant and Appellant.


Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Shawn McGahey Webb, Supervising Deputy Attorney General, Nathan Guttman, Deputy Attorney General, for Plaintiff and Respondent.